UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GILBERTO RAMOS,<br><br>　　　　　　　　Plaintiff,<br>v.<br>WARDEN LEGRAND, et al.,<br>　　　　　　　　Defendants. | Case No. 3:14-cv-00219-MMD-WGC<br><br>ORDER |

This habeas matter under 28 U.S.C. § 2254 comes before the Court on respondents' motion to dismiss petitioner Gilberto Ramos's counseled first amended petition as untimely (dkt. no. 16). Ramos opposed (dkt. no. 21), and respondents replied (dkt. no. 27). As discussed below, this petition must be dismissed as untimely.

**I.    BACKGROUND**

On December 30, 2009, Ramos pleaded guilty — through a Spanish interpreter — pursuant to a written plea agreement to three counts of attempted lewdness with his minor daughter (first amended petition, exhibit 7).[1] The state district court sentenced Ramos to three consecutive prison terms of four to fifteen years. Exh. 11. Judgment of conviction was entered on April 16, 2010. Exh. 12.

Ramos took no action in his case until October 19, 2012, when he filed a proper person motion for credit against sentence and amended judgment of conviction. Exh. 14. The Nevada Supreme Court affirmed the denial of the motion on September 18, 2013. Exh. 25.

---

[1]Unless otherwise indicated, exhibits referenced in this order are exhibits to petitioner's first amended petition (dkt. no. 10) and are found at dkt. nos. 11-13, 23.

Meanwhile, on May 23, 2013, Ramos filed a motion for appointment of counsel, motion for order to produce prisoner and conduct evidentiary hearing, and motion to withdraw guilty plea for non-sufficient evidence of count 3 and ineffective assistance of counsel. Exh. 17. After denying Ramos's motion for counsel, the Nevada Supreme Court affirmed the denial of the motion to withdraw guilty plea on February 12, 2014. Exh. 31. The state Supreme Court denied the petition for rehearing. Exh. 33.

Ramos dispatched his federal habeas petition for mailing on April 22, 2014 (dkt. no. 4). This Court appointed counsel, and counsel filed a first amended petition on November 24, 2014 (dkt. no. 10).

## II.     LEGAL STANDARDS

The Antiterrorism and Effective Death Penalty Act (AEDPA) went into effect on April 24, 1996, and imposes a one-year statute of limitations on the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d). The one-year time limitation can run from the date on which a petitioner's judgment became final by conclusion of direct review, or the expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A). Further, a properly filed petition for state postconviction relief can toll the period of limitations. 28 U.S.C. § 2244(d)(2).

A petitioner may be entitled to equitable tolling if he can show "'(1) that he has been pursuing his right diligently, and that (2) some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2009)(quoting prior authority). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." 292 F.3d at 1065. He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003).

Ignorance of the one-year statute of limitations does not constitute an extraordinary circumstance that prevents a prisoner from making a timely filing. *See Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling").

With respect to equitable tolling due to mental impairment, the Ninth Circuit has set forth a two-part test:

> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control . . . by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable to personally prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent that he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance . . . .

*Bills v. Clark*, 628 F.3d at 1099-1100 (9th Cir. 2010) (emphasis in original)(footnotes omitted); *see also id*. at 1100-01.

### III. INSTANT ACTION

Ramos sets forth a single ground for relief in the amended petition. He contends that his Fifth, Sixth and Fourteenth Amendment rights were violated when he did not enter his guilty plea knowingly and voluntarily because (1) he failed to understand the terms of the guilty plea agreement due to a language barrier and because his counsel failed to adequately explain the agreement and the amended charges; (2) the state district court failed to canvass Ramos about all consequences of the plea including that his conviction would render him removable from the country and that he would have to pay an $800 fee for the psychosexual evaluation; and (3) his counsel failed to explain to him, either prior to the entry of the guilty plea or after sentencing, that Ramos had a limited right to appeal (dkt. no. 10, pp. 5-7).

3

The state court entered Ramos's judgment of conviction on April 16, 2010. He did not file a direct appeal; consequently, the time to seek direct review concluded thirty (30) days later on Monday, May 16, 2010. The AEDPA one-year limitation period began to run the following day. On Tuesday, May 17, 2011, the AEDPA one-year limitation period expired. Ramos filed nothing until October 19, 2012, seventeen months after the expiration of the AEDPA limitation period, where he argued that he was entitled to 387 (not 378) days of credit for pre-sentence time served. Exh. 14.

In his counseled response to the motion to dismiss the petition as time-barred, Ramos argues that extraordinary, external circumstances prevented him from timely filing his federal petition (dkt. no. 21 at 5-8). Ramos contends the following: he has limited ability to speak, read or write English. He spent three months in intake (known as the "fish tank") at High Desert State Prison; thereafter, he was in segregation without access to the law library for eleven months. Ramos knew nothing about the U.S. legal process and was afraid to seek help from other inmates due to his fear of being attacked for the nature of his crimes. Subsequently, he was transferred to Lovelock Correctional Center. He participated in the Structured Living Program ("SLP"), a boot-camp style program that requires 24/7 participation from attendees. SLP inmates may not intermingle with the general population. While a typical inmate completes the program in twelve months, Ramos took fourteen months to complete it due to his low mental functioning. The entire time Ramos feared talking to other inmates about his case because of the nature of his convictions. He finally spoke with some Spanish-speaking inmates about his case, though the prison reality was that his indigency often made it hard to acquire prison law clerk help. *Id.* at 5-6.

In addition to his lack of knowledge of the legal process, Ramos argues that his language barrier constituted an extraordinary circumstance and that his inability to speak, read or write English has been apparent throughout his legal proceedings. *Id.* at 7. Finally, though Ramos notes that his mental deficiencies have never been professionally diagnosed or treated, he asserts that he has a low intelligence quotient,

memory problems and a "debilitating lack of self-esteem." *Id.* at 6. He struggled in school in his native Costa Rica and is barely literate, even in Spanish. He suffered a traumatic, poverty-stricken childhood and was physically and mentally abused by his parents. Ramos contends that his significant cognitive limitations affected his ability to timely file a federal habeas petition and that, given his combined limitations, he exercised reasonable due diligence. *Id.* at 8. Ramos included his and his wife's sealed declarations in support of his opposition.

In their response in support of their motion to dismiss, respondents point out that Ramos never alleges that he was aware of the AEDPA statute of limitations or how or when he became aware of it (dkt. no. 27). They argue that the record and Ramos's case notes belie his claims that his limited ability to speak English, his mental health and lack of access to the law library were extraordinary circumstances that prevented him from timely filing his federal petition. They observe that Ramos was able to file several state pleadings after the judgment of conviction was entered as well as his federal petition.

With respect to Ramos's argument that his limited abilities in English were extraordinary, external circumstances that prevented him from timely filing his petition, Ramos states in his sealed declaration that when he immigrated to the United States he lived in Latino communities and worked as a manual laborer so he never needed to communicate in English. He also states that his counsel did not bring an interpreter when he met with Ramos to explain the guilty plea agreement. The record reflects that an interpreter was present when Ramos entered his guilty plea and at his sentencing. Exhs. 7, 11. His Nevada Department of Corrections ("NDOC") Offender Information Summary reflects two instances when other inmates translated for Ramos at parole hearings. Exh. 37 at 4-5.

In Ramos's declaration, he asserts, generally, that he lacked law library access for about the first fourteen months of his incarceration and that he did not discuss his case with other inmates for fear of his safety. He further declares that even after he completed the SLP at LCC, he remained "completely ignorant" about his appeal rights.

However, beyond Ramos's declaration (and his wife's), nothing else in the record supports his contentions. Ramos submitted his NDOC Offender Summary, which is silent as to mental health issues or mental deficiencies. In fact, NDOC personnel noted that Ramos has adjusted to incarceration well, he is not a management problem, and he gets along well with staff and other inmates. Exh. 37 at 5.

Ramos does not include any allegations whatsoever as to whether he had any past knowledge of the AEDPA statute of limitations, or when or how he became aware of the limitations period. The Court notes that Ramos makes the bare assertion (although he repeats it in his declaration) that he had no law library access for about fourteen months, and respondents make the bare assertion that Ramos did have law library access during that period. Nevertheless, Ramos makes no allegation that he sought law library access and was denied, that he sought legal materials or forms in Spanish, or otherwise made requests for legal access that were denied. Ramos notes that in *Mendoza v. Carey*, the Ninth Circuit acknowledged that the "combination of (1) a prison law library's lack of Spanish-language legal materials, and (2) a petitioner's inability to obtain translation assistance before the one-year deadline" could constitute extraordinary circumstances sufficient to warrant equitable tolling. 449 F.3d 1065, 1069 (9th Cir. 2006). The petitioner in *Mendoza* alleged that "he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel or other source." *Id*. at 1070. However, here, Ramos does not allege either that the law library lacked legal materials in Spanish or that he was unable to get translation assistance. He does not allege that he sought legal access at all. In fact, there does not appear to be any connection between his alleged lack of access and any language barrier. Ramos apparently bases his vague assertion of lack of access to the law library generally on the nature of his convictions — where he was afraid to speak to other inmates — and the nature of his incarceration — where he spent 3 months in intake, 11 months in segregation and 14 months in SLP. A closer scrutiny reveals that Ramos is not basing his claim of a lack of access on the language

barrier or the lack of Spanish-language materials or even his mental deficiencies. Moreover, he ultimately surmounted his fears, albeit after the one-year statute of limitations had expired. Only then, about two and one-half years after his judgment of conviction was entered, he commenced to filing several state-court motions and then a federal petition.[2]

Simply put, the Court has carefully reviewed the record, and it belies Ramos's claim that his inability to speak, read and/or write English, his mental deficiencies, or his lack of law library access — whether singly or combined — constituted extraordinary circumstances that prevented him from timely filing his federal petition. Ignorance of the one-year statute of limitations does not constitute an extraordinary circumstance that prevents a prisoner from making a timely filing. *Rasberry*, 448 F.3d at 1154. Mindful that equitable tolling is unavailable in most cases, the Court concludes that Ramos has not met the very high threshold required to demonstrate that he has been pursuing his rights diligently and some extraordinary circumstance prevented timely filing. *Holland*, 560 U.S. at 649; *Miles*, 187 F.3d at 1107; *Miranda*, 292 F.3d at 1066. Nor has Ramos met his burden to demonstrate that (1) either he was unable rationally or factually to personally understand the need to timely file, or that his mental state rendered him unable to personally prepare a habeas petition and effectuate its filing; (2) and that he diligently pursued the claims to the extent that he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances. Accordingly, petitioner has not met his burden under the tests laid out in *Holland v. Florida* or *Bills v. Clark*.

*///*

///

---

[2] On April 27, 2012, Ramos submitted a request for termination of counsel to the county public defender (dkt. no. 28, Exh. B). On October 19, 2012, he filed a motion for credit against sentence and amended judgment of conviction. Exh. 14. On December 10, 2012, he sent a letter to the Clerk of Court requesting hearing minutes. Exh. E. He appealed the denial of that motion. Exh. 16. On May 23, 2013, Ramos filed a motion to withdraw guilty plea for insufficient evidence of count 3; he subsequently appealed the denial of that motion and then filed a petition for rehearing. Exhs. 17, 23, 32.

## IV. CERTIFICATE OF APPEALABILITY

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-51 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.*; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* Pursuant to Rule 11(a) of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meets the standard. The Court will therefore deny petitioner a certificate of appealability on that issue.

It is therefore ordered that respondents' motion to dismiss the first amended petition (dkt. no. 16) is granted. The petition is dismissed as untimely.

It is further ordered that a certificate of appealability is denied.

It is further ordered that the Clerk enter judgment accordingly and close this case.

DATED THIS 19th day of January 2016.

_____
MIRANDA DU
UNITED STATES DISTRICT JUDGE